Good morning. May it please the Court, my name is Elizabeth Kruschek. I'm an Assistant Federal Public Defender from Phoenix, Arizona, and I represent Mr. Lopez-Magallon in this matter. I will watch the clock and try to reserve three minutes for rebuttal. You're talking to the microphone. Thank you. Yes, sorry. Mr. Lopez-Magallon's conviction and the related supervised release revocation should be reversed and remanded to a new judge because the District Court's finding of guilt was based on two fatal violations of Mr. Lopez-Magallon's constitutional rights. One was his right to a conflict-free counsel under the Sixth Amendment when his attorney effectively testified against him and the judge used those statements against Mr. Lopez-Magallon to draw adverse inferences as to his guilt and his credibility. And the second violation was the use of Mr. Lopez-Magallon's post-Miranda silence against him by the prosecutor, both during questioning of Mr. Lopez-Magallon and during his closing argument, as well as the judge's reliance on that post-Miranda silence to reject Mr. Lopez-Magallon's duress defense. You didn't mention the Confrontation Clause, and I actually thought that was your possibly best argument, so I'm interested in why you left it out just now. Well, you know, I see it actually as a, in some ways, sort of a subset of the conflict-free counsel because the result of what happened when the attorney testified against his own client was that there was no opportunity for confrontation. So I don't mean to suggest that it was a weakness. As far as I can tell, the only thing that the lawyer's statements in the transcript added to what was said at what the defendant testified to was actually a mistake. That is, the judge said that the lawyer said that he had advised him of the sentence, possible sentence, before the defendant made the statement. But actually, he never said that. The lawyer never said that. So the lawyer, what the lawyer said, you're right. He never said, I told him the exact sentence that he was facing. No, he said, I just talked about procedures. He said, I talk about the process, I talk about accepting responsibility, trial, sentencing, and then he tells me the story. And he didn't say, I told him the likely sentence or even the possible sentence. But the problem is the judge then takes that statement by the attorney and says to the attorney, on the record, very clearly, you have testified in this matter. And what I take from your statement --" Sotomayor, but what I'm saying is a little weird, which is that it would be harmless had the judge not misconstrued it. That may be true. The judge read into it the most negative inference that one could take from that statement. Because if he just took him to say what he said he said, it really doesn't add anything to what the testimony was at trial. Right. The defendant did testify, yes, the first time I told my story was to my attorney. But why aren't we concerned instead about that the judge misread what he said instead of getting into complicated problems about whether it was testimony or conflicts or anything else? The problem is he didn't say it. Well, the problem is the judge took that, and then the attorney said the attorney was placed in the position of essentially becoming a witness against his own client, whether he meant to or really was not. He didn't favor his own client, because at that point he was protesting and saying that's not what happened. Well, he both protested and he said, you've made me a witness, this is an ethical conflict, because then he is put in the position of basically having to provide testimony about the context of what happened. He made me a witness for the Confrontation Clause problem, because had there been the opportunity to cross-examine him, he would have said clearly that it's not what I said. Well, and I think that feeds into what Judge Friedland was saying, that that's the fundamental problem, because that misunderstanding was never explored or undermined or explained, because there was no opportunity for Mr. Lopez-Magillan to cross-examine his own attorney. And I don't really see how it's a conflict, because what the lawyer does is make clear that he's aligned with his client. I mean, he's trying to get out of this situation and help the client. So it seems to me the real problem is how the judge used what he understood the testimony to be, and not the lawyer having, like, mixed alliances or something. The lawyer clearly is trying to help the client, isn't he, at that point in the dialogue? I think, well, he's left trying to attack himself, which then leads to the confrontation problem, because his only recourse at that point is to try to undermine his own credibility or explain the testimony that the judge believed that he gave, which still was. As to the post-Miranda silence, as far as I could tell, the only — it seemed pretty clear to me that the judge and the government were specifically relying on the post-Miranda silence, because they were saying that even if he had a right to silence any person who was in this situation would have favored his, you know, safety over silence. So the only response that I see from the government, and I'd like your reaction to it, is that you raised this, that the defendant raised it originally. Does that matter? No, it doesn't, and I can explain why for a couple of reasons. For one reason is the question that was asked of my client was, why didn't you tell them immediately? I believe he used the word immediately. And that can implicate a pre-Miranda silence, exactly. So my position, first of all, is that defense counsel never raised the issue of post-Miranda silence. And to invite that kind of error, as I set forth in my brief, you have to emphasize the silence, draw favorable inferences from it. That is not what defense counsel was doing. Defense counsel repeatedly said throughout the trial — So — but the answer involved explaining that he hadn't brought up the story until he was with his counsel, right? So at that point, hasn't the defense essentially explained that that's what happened? I mean, I am troubled by how they discussed it. Like, why didn't you ever talk about this before seems very troubling under Doyle. And yet, it does seem like the defense had already said, I didn't bring it up until I was with my counsel. But I think that you have to look at the context. The context in which that was brought up was not to emphasize the timing of the story. It was to emphasize the consistency of Mr. Lopez-Magallon's story. So the point was to show that he had told the same story. And I would also direct — So that's definitely right. So I guess I'm wondering if there's a — in the cases that talk about how the prosecution can cross-examine about something that's already been brought up, I mean, is there anything like this where it's like you can tell why they did it, but they did it anyway, and so it matters why they did it? Well, I did read a case, and I apologize that the name escapes me at the moment, of the client — the attorney did make a statement that the client did not testify because of the attorney's advice, and that was not considered to be an invited error. And I would also — Aren't there sort of two points in Doyle? One is mentioning it when it hasn't been mentioned, but the other is drawing an inference from it. Exactly. Drawing an adverse inference from it. And certainly, he didn't testify to any adverse inference, quite the contrary. Right. So the fact that the government then asked for an adverse inference, and as far as I could tell, got an adverse inference, seems to me to be squarely in the middle of a Fifth Amendment problem here. I agree, Your Honor. I agree. And I think, you know, to the extent that the Court has concerns about the questioning, I would direct you to, for example, United States v. Lopez, a 2007 opinion from this And the Court said in a footnote that the questioning on direct examination was really about pre-Miranda silence, and the government went much further and had a sweeping both pre- and post-Miranda argument that lumped those things together. And under those circumstances, because the government's argument and the inferences it was asking the Court or the jury at that point to draw were broad, that it was an invited error. And so I think this case is similar to that. A short, brief comment that isn't about what inferences to draw from the silence does not invite a wholesale attack on Mr. Lopez Magallon for exercising his Miranda rights. And that's exactly what both the government and the Court did, and they did it very plainly on the record. The prosecutor said threats of death supersede your right to remain silent. And the judge said in the real world, a person who's facing an AK-47 wouldn't worry about their right to remain silent. Now, a rather peculiar thing is there was no objection, was there? Well — Which was sort of amazing. Yes, ma'am. So during the questioning by the prosecutor, there was not. There was defense counsel during his sort of rebuttal closing argument did read from the transcript and pointed out that Mr. Lopez Magallon had been Mirandized at that point and was exercising his Miranda rights. And also during the colloquy — But he didn't object to the drawing of the inference or the argument for the inference. Well, I suppose he did not specifically say, I object to you drawing this inference, but he was certainly trying to make the point that this — that Mr. Lopez had exercised his constitutional rights and that that exercise should not be used against him to — Yes, but that's sort of a factual dispute about why did he do this, because he was exercising his — his Miranda rights versus their request to inference that — that that's not a good enough reason if you're actually in fear for your life, though it suggests he really wasn't in fear for his life. So that's a factual dispute, but it's not a legal dispute about whether they were entitled to draw this inference. I guess I — my position is still that the — the topic would be preserved given the brought up this idea of Miranda. And also considering that it is a bench trial where presumably a judge would be disregarding an admissible evidence. I mean, there's plenty of case law that talks about judges hearing an admissible evidence during bench trials and disregarding it. But that's not what happened here. The defense counsel was essentially asking the judge to disregard it, and the judge was relying on it. But never — never really asking is the problem. I mean, it's hard for me to see how this isn't a plain error issue, because, yes, the defense counsel says this was after the Miranda warnings or whatever, but he never says, you can't make this inference. He never mentions Doyle. He never says, please don't think about it this way, because really he was just exercising his rights. He never says anything that's even a request. MS. GOTTLIEB He — he invokes Miranda. Yeah, the presence of Miranda. But even if the court were to view this as a plain error issue and that the objection was not preserved, I would still say that this — this qualifies as reversible plain error because the judge made so clear that his rejection of the duress defense and the guilty finding was based on his use of this post-Miranda silence to draw this adverse inference. So it's clear that Mr. Lopez — this is error under Doyle for sure. It's clear that Mr. Lopez's substantial rights were affected because, you know, that silence was used against him. And I think it would certainly require reversal, given the nature of — of the district judge's statements. And that's why I would also ask for a new judge on remand. I do see I have about three minutes left. So — MR. LOPEZ-ESCALANTE Could you tell me what was in Exhibit No. 1 very briefly? Very briefly. MS. GOTTLIEB So Exhibit No. 1 was the transcript of the interview. MS. GOTTLIEB No, I thought that was Exhibit No. 2. No. MS. GOTTLIEB Exhibit No. 2 was the factual stipulation. And then Exhibit No. 3 was the stipulation to introduce —  LOPEZ-ESCALANTE What did he admit at Exhibit 1? MS. GOTTLIEB Exhibit 1 — so — okay. So Exhibit 1 is the transcript. And Exhibit 1 was my client a transcription, both in Spanish and English.  LOPEZ-ESCALANTE And English, yes. MS. GOTTLIEB Yes. So it's translated of the story of his duress defense that he told prior to the bench trial. MS. GOTTLIEB And the PR-122-123 statements are only in English, right?  GOTTLIEB They are. They're only in English. They were not — the transcript reflects that they were not translated for Mr. Lopez-Escalante, so he had no idea that those statements existed. MS. GOTTLIEB Well, I have two questions about the stipulations. One is, the case law seems to talk about voluntary, not voluntary in knowing, for the most part, which suggests something different. It doesn't suggest he has to actually know what's in the stipulation, as opposed to voluntarily agree to it. So is that correct? Or are you arguing that he could only stipulate to it if he knew what was in it? MS. GOTTLIEB Well, I think he has to at least understand — the voluntariness at least goes to him understanding what the consequences of the stipulation are. You have to — you may — maybe you don't know every single detail. MS. GOTTLIEB Voluntary usually means you're not coerced. MS. GOTTLIEB But — well, but I think it has to be informed. I mean, there is case law that talks about the stipulation has to be informed. The person has to understand the nature of what they're stipulating to. And so in this case, particularly with the interview transcript, there's no evidence that as to those statements of the attorney, Mr. Lopez-Magallon understood — he couldn't have understood what he was stipulating to because the attorney said on the record, I messed up and I didn't realize this was in there. MS. GOTTLIEB That goes to knowingness, right? Don't some of the cases talk about knowing and voluntary? MS. GOTTLIEB They do. It's — I mean, I have seen both language. I — you know, I recognize that generally it's voluntary, but case law does talk about knowing and informed. MR. LOPEZ-MAGALLON But everything that he understood in Spanish in that transcript, you cannot say that he did not know what he was doing. Or can you? If it's after Miranda. MS. GOTTLIEB Oh, in the transcript. He was — yes, he was — in that — you cannot later say, oh, hold it, I have a second thought about that because it was after Miranda.  GOTTLIEB Well, no, he — I mean, he did admit the transcript. I'm just trying to figure out where you're going with the question because I'm not sure. MR. LOPEZ-MAGALLON Okay. What I'm trying to say is that everything that he said in — and was in Spanish, and it's there, and it's after Miranda warning, you cannot challenge it. Or can you? The — just the transcript itself.   MS.  MR. LOPEZ-MAGALLON Yes. MS. GOTTLIEB So he — what my client said was stipulated to — I guess — is that your point, like what I'm challenging as to the stipulation? MR. LOPEZ-MAGALLON Yes. MS. GOTTLIEB Okay. So the problem is that — I agree with you that for — if it had just been my client's interview and those statements, my argument would be very weak. But the problem is that there was a portion of that transcript where the attorney was used against my client, and my client would have had no idea that that was in there, one, because it wasn't translated for him, and two, because his own attorney didn't fully realize the implication of it. MR. LOPEZ-MAGALLON Unless he knew about it and he said it in that other transcript, right?  GOTTLIEB Which other transcript? MR. LOPEZ-MAGALLON Well, I'm trying to find out how much he knew after Miranda that he put it in the transcript. If what the lawyer accepted is there, you have to scratch all of that, because he himself  MS. GOTTLIEB Because my client said it? MR. LOPEZ-MAGALLON Yes. Well, didn't he say it? Exhibit one. What is exhibit one? MS. GOTTLIEB Exhibit one is the transcript — MR. LOPEZ-MAGALLON Of what?  GOTTLIEB — of a free talk interview that my client did with the government prior to the bench trial. MR. LOPEZ-MAGALLON Okay. And that was after Miranda?  GOTTLIEB Yes. MR. LOPEZ-MAGALLON Okay. Good. So everything that he may admit there as a factual situation done by him after Miranda, it's deemed that he knows it because he's stating it outside. Or am I wrong? MS. GOTTLIEB My understanding is that what you're saying is, yes, that's true as to whatever he said, but not as to what the lawyers said.  LOPEZ-MAGALLON Not as to what the lawyers said. MS. GOTTLIEB But it wasn't translated. MS. LOPEZ-MAGALLON Right. And I'm just not sure — MS. GOTTLIEB It wasn't translated. And is there some general idea that what lawyers say isn't really evidence? MS. LOPEZ-MAGALLON Correct. And so there was no reason for him to assume that it was going to be used in this way, but the district court did use it in that way. MS. GOTTLIEB But that really doesn't go to the stipulation being bad. It goes to the fact that it shouldn't have been relied on. MS. LOPEZ-MAGALLON Yeah. Correct. Correct. And maybe it all goes back to the confrontation issue, where at that point, there was just this inability to deal with this issue. There were things — there were many things that the district court could have done, and it didn't do them. MS. GOTTLIEB Okay. Your time is up. We'll give you a minute of rebuttal. Thank you. MR. MISKELL May it please the Court. I'm Bob Miskell from the U.S. Attorney's Office in Tucson on behalf of the United States. First, I think it's important to remember what the defendant actually testified to. MS. GOTTLIEB What? MR. MISKELL What the defendant actually testified to. The defendant testified he didn't tell the agents in the field anything about his duress defense. He specifically mentioned in his testimony two reasons why he didn't tell the agents anything. One was because he was told he had the right to remain silent, and two was because of his fear that the — MS. GOTTLIEB Well, I understood they were sort of sequential, i.e., I at first didn't do it because this guy was there and he was — he had threatened me. And then once they told me that I didn't have to speak, I said, oh, I'm not going to speak. MR. MISKELL Okay. MS. GOTTLIEB So I thought they were sequential. MR. MISKELL But he gave — he gives both reasons in his testimony. MS. GOTTLIEB Yes, but sequentially. MR. MISKELL Okay. And then he says the first time I told anybody was when I told my attorney when I first met him, which was at the preliminary hearing. MS.  MR. MISKELL Okay. Those were the facts the Court used to evaluate the credibility of the defendant's testimony. MS. GOTTLIEB But not really, because the Court says that the attorney admitted that you didn't say it until after he told you about the sentence. MR. MISKELL Well, actually, I'm reading — I read the transcript different than that. Basically, the way I see what happened was the Court was under the impression that the defendant — the defense counsel had talked about the sentencing.  GOTTLIEB Yes, but it didn't say that. MR. MISKELL And the defense counsel said, no, that's not what happened. I just told them — MS. GOTTLIEB And not only that, the transcript doesn't say that. It definitely doesn't.  MISKELL The defense counsel says all I do is tell them the general procedures. MS. GOTTLIEB Right. MR. MISKELL And then the Court goes, I understand that. That's the Court's exact quote, I understand that. So he's not using the fact that the defendant knew about the sentence as I read the  MS. GOTTLIEB But he said it earlier that he was. MR. MISKELL He said it earlier and he was corrected.  GOTTLIEB All right. But he — MR. MISKELL And he acknowledged — MS. GOTTLIEB All right. So that may deal with the question of whether he was relying on what the attorney said, but it doesn't deal with the question of whether he relied on the post-Miranda silence, which the government definitely did in its closing argument, and which, it appeared to me, the judge did as part — as the main issue in the credibility finding. So I don't understand — so except for your argument that somehow this was invited or okay because it — of what the defendant testified to, I don't see how you have elect — I mean, I guess the other elect to stand on is that it was — that it's plain error. MR. MISKELL Exactly. It's not plain error because it — the key — what, again, the government — and I agree with you that the government and the judge said what they said, obviously. But the key fact in this — in this case, in evaluating the duress defense, is he didn't tell the agents immediately. And he didn't tell anybody until — until he testified.  GOTTLIEB But what the government said and what the judge, I believe, said, but I know the government, I think the — and I think the — the judge brought this, was essentially your right to silence — no — no person who really did this would  MR. MISKELL Okay. GOTTLIEB Right. Which obviously involves the point at which he said he was remaining silent, which  MR. MISKELL But in light of the fact that in this case it was evidence of pre-Miranda silence, nobody's challenging that, which leads to the same result, basically. As a matter of fact, it's even more compelling. MS. CARRINGTON But once you say — once the government argues and the judge also accepted this idea that he never said it until he meets his lawyer, now you're commenting on the pre- and the post-Miranda silence. I don't know how — I mean, yes, there's a pre- part that maybe is appropriate to comment on, but it wasn't only said. He didn't say it immediately. It was he never said it until he met his lawyer. GOTTLIEB And that's what he testified to. MS. CARRINGTON Yes. GOTTLIEB So clearly we can't rely on that. MS. CARRINGTON But once they use the inference from that, they're drawing the inference that Doyle doesn't let you draw. GOTTLIEB Well, what — what I would argue is to the extent any such inference was drawn, the defendant cannot demonstrate prejudice as required for plain error because the pre-Miranda — permissible pre-Miranda silence leads to the same result. Actually, it's even more compelling. MS. CARRINGTON But it wasn't what they were relying on. What they — I mean, they seemed much more impressed with the fact that he continued to remain silent, you know, after the scary guy wasn't there anymore, and — and specifically said — contrasted his right to remain silent with the fact that he was fearful and said that any person would — would testify even though you have a right to remain silent. It was specifically pegged to the silence, what they relied upon. GOTTLIEB But again, under plain error, the defendant has to demonstrate that it matters. And it doesn't matter because the pre-Miranda silence leads to the same result. He didn't — the key thing is, he didn't tell anybody immediately, and he didn't — MS. CARRINGTON It might lead to the same result had they argued it that way, but they didn't, and neither did the judge. Did those stipulations, were they translated to the defendant? Because I didn't see anything that was a translation of the stipulation. This gentleman doesn't know any English. MR. CARRINGTON The only one there's any evidence of anything is on the stipulation regarding the prior statement. And in that, the defendant basically testified he signed it because he was trusting and relying on his attorney. It doesn't specifically say it was translated, but it does say he was relying on his attorney. MS. CARRINGTON So I'd like to ask you about the confrontation clause, because at least on this Doyle error, you have plain error. I don't see how you have even harmless error on the confrontation clause. You didn't argue it. So if — if there's a confrontation clause violation because these statements by the whether rightly or wrongly or by misunderstanding them or not, how is this not a situation where it ended up that there was testimony that wasn't cross-examined, used against the client, and you haven't even argued that it was harmless? MR. CARRINGTON It wasn't — I would say there was nothing used against the client beyond what the client testified to. MS. CARRINGTON But that's not true, because the judge clearly says that the lawyer said that the client didn't bring this up until after he was told what his sentence could be. And then the defense counsel clarifies, and then the judge, as I read the transcript, the judge credits that by saying, I understand that. Sotomayor Where is that in the ER, please? MR. CARRINGTON Let me find it real quickly, Your Honor. It's ER at page 84, it looks like. Yes, it's ER at page 84. MS. SOTOMAYOR ER which? MR. CARRINGTON At page 84. MS. SOTOMAYOR Okay. How — I mean, I have no idea what he meant by, I understand that. I mean, the lawyer is trying to explain that he didn't really talk about the sentence, but the judge had already said he thought that, and then I don't — I mean, he said so many different things. How do we know what it is that he says he understands? MR. CARRINGTON I mean, he's understanding what the defense counsel's immediate prior  MS. SOTOMAYOR But then the court says, well, you know, in the real world, a guy that claims to have been beaten and been under a threat by an AK rifle for five days, does he really worry a whole lot about his right to remain silent? And what he says might be used in court. Wouldn't he be more concerned about — now, isn't that a direct Doyle problem? MR. CARRINGTON Again, Your Honor, we're going back to the plain error argument again. MS. SOTOMAYOR Okay. And it's a plain error. It's pretty plain. MR. CARRINGTON But it's not prejudicial because you get to the same result because he didn't tell the Supreme Court that either. MS. SOTOMAYOR You might get to the same result, but you didn't get to the same result because both the judge and the prosecutor says essentially the same thing in the closing argument. Threats of death supersede everything. It supersedes your right to remain silent. It supersedes you don't want to get caught or you're worried because you might know in Mexico. So they're — both of them are not — don't seem to be making much out of the pre-Miranda silence. They're making a great deal out of the post-Miranda silence. MR. CARRINGTON Okay. Logically, the pre-Miranda silence is actually more compelling than the post-Miranda silence. MS. SOTOMAYOR Well, his story — his story was I was about to say something when he gave me these warnings, and then I decided to remain silent. MR. CARRINGTON Right. But he also said he didn't tell them immediately because he was afraid, basically.  SOTOMAYOR Well, right. But he did say I was about to tell them. Maybe that's why they didn't spend a lot of time in the pre-Miranda silence, because it was cut off, essentially. MR. CARRINGTON But the pre-Miranda silence, the fact that he doesn't immediately tell the agent, hey, this guy has been holding me, essentially kidnapping me at gunpoint for five days. We — he never slept. I could never escape. That's what is compelling that wasn't said immediately when he saw it.  SOTOMAYOR So basically, your whole argument is unapprecious. MR. CARRINGTON On that issue, yes. MS. SOTOMAYOR I mean, you're agreeing that there was a Doyle violation, both by the — by the government and by the judge. MR. CARRINGTON I am agreeing that the argument shouldn't have been phrased the way they were, but any Doyle violation as far as the evidence was created by — was caused by the defendant was admitted by the defendant. MS. SOTOMAYOR We're not talking about the evidence. I mean, first of all, he didn't testify. I mean, the Doyle rule clearly goes to the inference. Separately.  CARRINGTON And so, yes, the argument should have been phrased in the — and as I think I said in my brief, the case — MS. SOTOMAYOR Well, it's not just an argument. It's the judge's finding. MR. CARRINGTON The court and the government — let me step back one second. Because of the way this evidence came in, the government didn't attempt to distinguish between pre- and post-Miranda silence, which is what it should have done and what would normally be done. You know, you can talk about pre-Miranda silence, but you can't talk about post-Miranda   SOTOMAYOR All right. The judge says, I do not find that story to be believable. He had previously committed the same offense against the United States. In a — in the face of what I find to be reasonable, he does not tell the story to anyone until he is actually the throes of the criminal process, which is — with his attorney, which obviously includes what he said earlier, that is, the post-Miranda period. So it seems to be key to his credibility finding. But that's what the — again, that's what the defendant testified to. SOTOMAYOR I'm sorry. What? CARRINGTON That's what the defendant testified to. SOTOMAYOR That's what the defendant testified to? CARRINGTON That he didn't tell anybody — SOTOMAYOR He testified to it, but he didn't draw any inference from it. CARRINGTON What I'm saying is, logically, the pre-Miranda silence period is the more compelling as far as evaluating the credibility of the defendants. SOTOMAYOR Well, it might be to you, but apparently it wasn't to these people. CARRINGTON And as I was saying, that was a result of they didn't make an attempt to distinguish between pre- and post-Miranda silence because the defendant was the one that introduced the post-Miranda silence. And it appears that the prosecutor thought once the defendant produced it, introduced it, it was fair to comment on. SOTOMAYOR So I'd like to go back to your answer about the confrontation clause. It seems like — so we first have the judge using the lawyer's statements as if they are evidence against his client. Now, it seems like you're saying somehow that confrontation violation gets erased because maybe later the judge understood. What does that mean? I mean, can you erase a confrontation clause violation with something later that maybe goes the other way? CARRINGTON Well, again, I'm not sure you're talking confrontation because there was no testimony here by the defense counsel. SOTOMAYOR But the judge thought it was. I mean, this is what's so weird here. CARRINGTON Well, the judge credited because the transcript was stipulated into evidence by the defense counsel, the judge felt — SOTOMAYOR But like in a deposition, when a deposition is admitted into evidence, do we assume that the things the lawyers say are evidence? CARRINGTON Well, usually that's excised out. SOTOMAYOR Right. So I don't understand what happened here. Why does the judge all of a sudden think that the lawyer's statement, that he's treating it as really key? CARRINGTON Because it wasn't excised out. It was — it was admitted into evidence by stipulation. Kagan Well, it was admitted into evidence if it's evidence, but it's not evidence. In other words, the transcript was admitted for whatever it is. What the lawyer says isn't evidence in any world.  SOTOMAYOR In this world, but it apparently was. CARRINGTON And the — again, what the defense attorney said was consistent and was — didn't go really beyond what the defendant testified to. Let me — let me clarify. SOTOMAYOR Well, but let me clarify for a minute what you're — or let me get a clarification. You say, well, the judge then understood what the judge — what the lawyer said and corrected himself. That's more evidence. I mean, once again, he's relying on the — on the lawyer as evidence as to what happened  CARRINGTON Okay. SOTOMAYOR Even if — even if he's doing what you say he said. CARRINGTON The defendant testified that the first time he told anybody was when he told his attorney at the initial appearance. That was the defendant's testimony. SOTOMAYOR But the judge seems very persuaded by the idea that it's not even that bad. It's even worse because he didn't do it until after he heard about his sentence. CARRINGTON Well, I think the phrase at one point that the judge uses is he's in the throes of the criminal process. SOTOMAYOR That's one version. But there's another version where he says very explicitly it's not until he hears about his sentence. CARRINGTON Okay. And that's the first version. And then the defense counsel attempts to clarify. KAGAN Okay. So now he's testifying again. CARRINGTON He's clarifying for the record what — what — SOTOMAYOR But back to my question, who cares to be clarified? If you have a Confrontation Clause violation, another witness could testify and have a little different version. I don't think that takes care of the Confrontation Clause violation. I don't understand how that gets us out of the problem. CARRINGTON Well, again, what I'm saying is there is no — the defense counsel wasn't testifying. I mean, one of the problems we're having is — SOTOMAYOR But the judge said he was testifying. He specifically said that. CARRINGTON The judge used the term testifying. I don't think he was saying that he — that the defendant was under oath, which is what testimony is. SOTOMAYOR But he uses it as significant evidence of whether this guy is credible, what his own lawyer said about him. CARRINGTON I would argue he's using what the defendant's own testimony was about  SOTOMAYOR But that's not what he says. I mean, the only way he gets to this point is by talking about page 22 of the statement, which is where the lawyer is talking. CARRINGTON And then that gets cleared up, and he doesn't rely on it. He relies on just the first time he said it was when he was in the criminal justice system. SOTOMAYOR So if you had argued that this is harmless because it later got corrected, maybe we could talk about this. But you didn't argue that in your brief. We've got a Confrontation Clause claim in which there's no harmlessness argument. So it seems like we're under Gonzalo's Flores — is that the name of our Beyond Debate standard? And I don't understand how anything is clear after the point where the judge says you didn't bring it up until the sentence. Nowhere is there a clear statement after that that we know for sure the judge doesn't think that anymore. Instead, when he finally does the verdict, he says, I've already set on the record my reasons for doubting this guy's credibility. And that goes back to the original statement. JUSTICE BREYER Okay. And actually, I would say in the government's brief, the government argued it as a plain error issue. And on page 30 of the government's brief, the last paragraph of the argument — I think that's the right argument — is that the defendant can't show prejudice, which is the same thing as harmlessness. He had an incredible story — SOTOMAYOR Isn't this the end of your Doyle argument? JUSTICE BREYER I remember your Doyle argument ending that way. I think you have, like, two pages — I'm trying to find it — on the Confrontation Clause, and I don't think it has anything about harmlessness. Your Confrontation Clause starts on page 36. And all it is, is the end is, thus the defendant's claim that he was denied the right to confront is evidence that he was responsible for fails. SOTOMAYOR Tell me, what would the result be if we thought either the Confrontation Clause or the Doyle was reversible error? We reverse, and then what? Is everything washed out at that point? Could he now claim a jury trial? Could he reverse the stipulations? I mean, where are we at that point? JUSTICE BREYER I would assume he could demand a jury trial. SOTOMAYOR You assume that he could get a jury trial? JUSTICE BREYER I assume he could, yes. I assume he could try to — he could annul the stipulations. SOTOMAYOR He could basically start over, right? JUSTICE BREYER Yeah, I would think so. Oh, and if there is — there is no need to send this to another judge. I mean, the Judge Bury certainly is capable of taking whatever ruling this Court makes and applying it faithfully and professionally. SOTOMAYOR Probably, but it's pretty bizarre stuff. JUSTICE BREYER Well, it's a bizarre — it's a — SOTOMAYOR Isn't it hard to put aside? I mean, he seems to have been very persuaded by things that were improper. And how is he going to put that aside, even if we tell him he's supposed to? It's a credibility determination that he's really already made. JUSTICE BREYER But, again, I would kind of put the judge in the situation akin to when a judge hears a motion to suppress. Say the defendant testifies. Say the judge finds the defendant's not credible. That doesn't preclude the judge from conducting the trial at that point. SOTOMAYOR Well, but sometimes that's — they're just not credible as to what happened in this event. It doesn't necessarily mean they're never going to be credible again. But this is the core credibility question of the whole case. JUSTICE BREYER And if you look at the whole defendant's story, it is an incredible story. I mean — SOTOMAYOR Well, so then maybe you win before a different judge.  JUSTICE BREYER I don't — SOTOMAYOR Without Doyle and without this confrontation problem. JUSTICE BREYER I don't think the Court needs to find that Judge Breyer can't be fair at a retrial. I think that would be totally inappropriate, actually. KAGAN One last question. With regard to plain error, if there — because on the Doyle issue, at least, it's a plain error problem. Is it cumulative? In other words, if we thought that there was both a confrontation clause problem and a Doyle problem, would we look at the two pieces together with regard to prejudice? JUSTICE BREYER You — KAGAN Where one is plain error and the other is not? JUSTICE BREYER There — I know there is one case where the Court did that. I'm trying to remember the name. SOTOMAYOR So it is okay. I had the same question in preparing for today. So you don't have to meet all the prongs of plain error if you're just using the error cumulatively? That's basically the question? JUSTICE BREYER Yeah. And there is — I'm trying to — I'm blanking on — I think the case might be Preston, but I'm not positive. SOTOMAYOR Preston? JUSTICE BREYER Preston. P-r-e-s-t-o-n. SOTOMAYOR Okay. Thank you very much. You're way over time. We'll give you two minutes to rebuttal because he's way over time. QUESTION I'd first like to just address plain error briefly. Judge Berzon — SOTOMAYOR Maybe — do you know the answer to this question? Can we use the error from something that would be plain error without all the prongs in cumulative error? QUESTION I believe counsel for the government is correct that the most recent cumulative error case is Preston. I'm not certain either, but I think that that is correct. And in terms of the plain error, if the Court is reviewing under Doyle, I would echo Judge Berzon in saying that this is a case where we know what the judge relied on because the judge told us what he relied on, and it was the post-Miranda silence. And I think that satisfies the plain error standard. And so the government's idea that, well, there's pre-Miranda silence that could be commented on that's compelling, the fact is that's not what was used and that's not what happened. SOTOMAYOR In other words, he could have reached a conclusion based on that maybe, but he didn't. QUESTION But he didn't. And this is a case where we have a very clear record of what the persuasive and compelling evidence was for this judge, and he said it was post-Miranda silence, and I don't think that this Court should ignore that. In terms of the confrontation clause, I would just point out, as Judge Friedland said, that the government has waived almost every aspect of that argument other than to say that it was somehow waived by us, which it was not. In terms of the remand to a new... SOTOMAYOR How and when was it raised by you? QUESTION Well, I think that my client never waived his confrontation rights. And the government's argument is that by stipulating to the admission of this testimony that he somehow waived his confrontation rights. But that is not true for... SOTOMAYOR Oh, right. But in the discussion, when the lawyer kept saying, you know, I didn't mean to testify, what I said wasn't evidence, he didn't specifically raise a confrontation problem. QUESTION He didn't specifically say that, no. But he was getting at that point. And certainly the client did not waive those confrontation rights simply by entering into the stipulation, which is essentially what the government's argument is. SOTOMAYOR I don't even think they're arguing that you didn't object. I think the only thing they're arguing is that you stipulated to admission of the transcript. And if we disagree with that as a basis, then I don't even, I think you're giving them more credit. I mean, they're not even saying you didn't object at trial. I think they've almost, maybe they waived that, I don't know how that works. If you didn't object, but they haven't pointed it out, I don't think we have to apply... SOTOMAYOR You can't waive a waiver. QUESTION Yeah. You're correct. You're correct. And then I, just briefly to address the remand to the new judge, I do think this is one of those extraordinary circumstances that does require remand to a new judge, simply because this is a judge, this entire case hinged on my client's credibility. And the judge made it clear time and time again that he didn't find him credible because of the post-Miranda silence, because of the attorneys that the statement made. And it's no, no slight to the district judge, but I just think this is one of those cases because it's such a bizarre context that it would... No, ma'am. I did not. SOTOMAYOR So can I ask another question? This is such a weird case because this testimony from the lawyer gets used as evidence. It's a bench trial, so we know what the judge is thinking. Is there any, like, rule of law that is going to emerge from this, or is it just a fact-bound thing that we maybe have to fix in your view? I'm basically asking, like, is there something we should be publishing? If you were to win, is there something that you think is a principle that's emerging from this? Honestly, Your Honor, I think it's such a bizarre situation that it seems very fact-specific to me. I mean, I feel like it's application of settled law in a bizarre context, quite frankly. So I don't think it's making law. I think it's just trying to apply it properly. Okay. Thank you both very much. It was a helpful argument. And we will submit the case of United States v. Lopez Magellan and recess. Thank you. All rise. This court for the session is now adjourned.
judges: Berzon, Friedland, Dominguez